16890

STATE v. SHOEMAKE *ET AL.*
(82 S. E. (2d) 802)

*Henry J. Lake, Esq.,* of St. Matthews, *for Appellants,*

*Julian S. Wolfe, Esq., Solicitor, for Respondent,*

July 13, 1954.

OXNER, Justice.

Appellants, E. L. Shoemake and George Jones, were convicted of grand larceny and duly sentenced. The sole question raised by their appeal is whether the evidence is sufficient to sustain the verdict.

In the indictment, appellants, along with Sammy Barton and Henry Bonette, were charged with stealing soybeans belonging to W. W. Carroll, of the value of $75.20. The record does not disclose what disposition was made of the charge against Barton and Bonette. On the trial under review, they were used as witnesses against appellants.

Carroll is engaged in the trucking business. He maintains a warehouse in Calhoun County where soybeans are stored by farmers and when sold, are hauled to various mills. Carrol also buys and sells soybeans. Bonette, a Negro, is one of his truck drivers. Appellant Shoemake is employed as a foreman by the Hicklin Motor Lines, which also does considerable business in hauling soybeans. Appellant George

Jones, a Negro, and Sammy Barton, a white man about nineteen years old, were also employees of this company. Shoemake knew both of them well. In fact, Jones frequently worked under him.

The testimony of Barton and Bonette, who were the principal witnesses for the State, tended to establish the following facts:

During the early part of December, 1952, Barton and Shoemake went to the home of Bonette and suggested as an "easy way" to make some money that they take soybeans from the truck driven by Bonette. At first this suggestion was not favorably received by Bonette but after several more visits, he agreed. Shortly thereafter, pursuant to a prearranged plan between these three men, Shoemake and Barton went to Jones' house one night in a pickup truck and, along with Jones, proceeded to a road intersection in Calhoun County where about midnight they met Bonette, who had a truck load of soybeans which Carroll was sending to Gafney, South Carolina. Shoemake drove off a short distance while Barton, Jones and Bonette filled sixteen sacks with soybeans, after which Shoemake returned and the soybeans taken from Bonette's truck were loaded on the pickup truck. Bonnette then proceeded on his way. Shoemake, Jones and Barton drove to St. Matthews where the beans were placed in a chicken house in Jones' yard. Barton and Shoemake then left in the pickup truck.

Barton testified that a few days later, Shoemake gave him some money but he did not recall the amount. Bonette said he received $10.00 from Shoemake. There is no direct evidence of what disposition was made of the stolen soybeans, although there is testimony to the effect that on several occasions in December, 1952, soybeans were sold to the Southern Cotton Oil Mill in Orangeburg in the name of Shoemake.

During the latter part of December, Barton and Shoemake again met Bonette at a road intersection where they

took ten or twelve sacks of soybeans from the truck and carried them to Shoemake's house. Barton and Bonette disagreed as to whether Jones was along on this occasion. For their respective parts in this transaction, Barton received from Shoemake $20.00 and Bonette $10.00.

Jones did not testify. Shoemake denied any connection with the thefts. He said that the only time he sold any soybeans to the Southern Cotton Oil Company was in November, 1951, when he hauled and sold nine bags belonging to Bonette, who paid him $10.00 for his services.

The sufficiency of the evidence to warrant a conviction of Shoemake is hardly open to serious question. The evidence as to the guilt of Jones is not quite as strong. He apparently had no part in the planning. Neither is there any testimony that he was told of the purpose of the trip when he was picked up on the night of the first theft. It is further shown that he is a loyal, hard-working laborer who readily followed any instructions given by his foreman. But we think the jury was fully warranted in inferring from all the circumstances, particularly when unexplained, that Jones with guilty knowledge assisted in stealing the soybeans.

The further question is raised that the evidence is insufficient to establish grand larceny. On the first occasion sixteen sacks of beans were stolen. Each sack contained more than a bushel. The market value at that time was approximately $2.75 a bushel. It thus clearly appears that the value of the stolen beans exceeded $20.00.

Judgment affirmed.

STUKES, TAYLOR and LEGGE, JJ., and E. H. HENDERSON, Acting Associate Justice, concur.